USDC - BALTIMORE
25 JUL 29 AM 11:15

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Beginning in March 2024, the United States Postal Inspection Service (USPIS) and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating a channel on the social media application Telegram that was advertising the sale of machinegun conversion devices, also known as "Glock switches."

On or about May 8, 2024, Postal Inspectors observed that the Telegram channel began to advertise firearms for sale, in addition to the Glock switches.

On or about May 11, 2024, United States Postal Inspectors removed from the mail stream a parcel inbound to Frederick, Maryland, that was believed to contain a firearm sold on the Telegram channel. Postal Inspectors obtained a search warrant for the parcel, which was executed on May 13, 2024. Inside the parcel was a handgun case containing a Glock 23, .40 caliber semi-automatic pistol bearing serial number FHG941. The firearm was loaded with a 13-round magazine. There was an additional extended magazine inside the handgun case loaded with an additional 28 rounds, with an additional two rounds loose inside the handgun case.

The seized parcel was addressed to "DREW HILL 312 E 9TH ST FREDERICK MD 21701-4611." Through investigation, Postal Inspectors determined that the recipient's name was fictious, but the address was real. A search of databases showed that the Defendant was associated with the address.

On May 20, 2024, Postal Inspectors and officers with the Frederick City Police Department executed multiple search warrants at addresses connected to the Defendant, including 312 E. Ninth Street, Frederick, Maryland. The Defendant was determined to have resided at 312 E. Ninth Street, Frederick, Maryland from law enforcement surveillance of the Defendant. At 312 E. Ninth Street, Frederick, Maryland, law enforcement determined that the Defendant resided on the second floor of the residence. His bedroom was located on the Defendant's bedroom based on his identification being found in the bedroom, along with United States mail articles addressed to him. Additionally, the Defendant resided with his grandmother and her friend, who both confirmed to law enforcement that the Defendant resided on the second floor and that they did not go up there. In a closet outside of his bedroom, law enforcement recovered a Glock 29, Gen 5 10mm semi-automatic handgun bearing serial number CCRS762, that was sitting on a shelf in plain view. Inside the same closet was a gray duffle bag which contained two Glock switches that were hidden inside a box for Apple iPod earphones, and two cases for Glock handguns. The serial number for the recovered Glock handgun matched the serial number on one of the Glock cases inside the duffle bag. That Glock case contained three loaded magazines, including two extended magazines.

Rev. August 2018

The other Glock handgun case listed serial number BWHV281. This case contained a two loaded extended magazines, and numerous rounds of loose ammunition.

Inside the Defendant's bedroom, law enforcement recovered an additional Glock switch, along with numerous firearms parts, magazines, and rounds of ammunition. This included a black Glock 10mm magazine; a clear/black handgun magazine containing approximately twenty 10mm caliber bullets; a black SGM Tactical handgun magazine containing approximately thirteen 10mm caliber bullets; a black Glock handgun magazine containing approximately fifteen 10mm bullets; a clear/black magazine containing nineteen .357 caliber bullets; a black Glock magazine cont. thirty-three 9mm caliber bullets; an additional twenty-four .357 caliber bullets; an empty black handgun magazine; a box of ammunition containing approximately forty-nine 10mm caliber bullets; two ammunition boxes containing thirty-nine Underwood 10mm caliber bullets; a FC.357 caliber shell casing; a loose Blazer 9mm caliber Luger bullet; a WIN 9mm caliber Luger bullet; a SIG AUTO 10mm caliber bullet; a box of Winchester 9mm Luger ammunition containing approximately 199 bullets; a FC SIG .357 caliber bullet, 10 SIG 10mm auto cartridges; and two black handgun magazines.

In addition, law enforcement recovered two black handgun holsters; a black handgun barrel, a black Olight gun light; two red Polymer 80 jigs in boxes, a magazine extension; a SS80 box containing miscellaneous gun parts; a green SS80 builder tool set; and other assorted firearm parts. Law enforcement also recovered numerous empty boxes for Polymer 80 firearms. No Polymer 80 firearms or the Glock bearing serial number BWHV281 were recovered from the residence. Law enforcement also recovered $21,660 in United States currency, personal use quantities of suspected Lean, or "Purple Drank," and a plastic baggie containing a white chunky substance of suspected narcotics.

Law enforcement also recovered the Defendant's cell phone from the bed in the Defendant's bedroom. A review of the Defendant's cell phone revealed messages between the Defendant and a firearm seller from the Telegram channel discussing the purchase and sale of firearms and machinegun conversion devices. The first conversation occurred between March 4, 2024, and March 28, 2024, regarding the Glock 29, Gen 5 10mm semi-automatic handgun bearing serial number CCRS762 that was recovered during the search warrant execution. The Defendant and seller discussed the sale and mailing of the firearm, had a FaceTime call with each other regarding the firearm, and sent screenshots of the firearm and parcel back and forth to each other. When the Defendant received the handgun, he took a video of the parcel closed and a video with the parcel open and him holding the Glock handgun. The handgun was the same handgun recovered from the closet outside of the Defendant's bedroom, along with its case.

Prior to execution of the search warrant at 312 E. Ninth Street, Postal Inspectors identified an additional parcel delivered to the residence on or about March 23, 2024. The phone number associated with this parcel was 301-676-8389. The Defendant provided this exact phone number with his contact information to officers with the Frederick City Police Department in March of 2024 for a separate, unrelated call for service in Frederick, Maryland. Following the search warrant execution, it was determined that this parcel contained the Glock 29, Gen 5 10mm semi-automatic handgun bearing serial number CCRS762 and its case.

On the Defendant's cellphone, Postal Inspectors also located additional text conversations starting on March 21, 2024 between the seller and the Defendant in which they discussed "buttons," a colloquial term for Glock switches. The Defendant and the seller discussed the sale of Glock switches, with the seller stating that he was looking to sell 25-35 Glock switches. The Defendant replied that he would ask "my folks" if they needed more Glock switches, and that his "folks" would pay approximately $150.

The Defendant also discussed obtaining additional firearms, stating that "MFs be needing poles out here too," meaning that he knew individuals that were looking for firearms. The seller said he could get firearms "dirty," meaning stolen, and the Defendant replied "And dat shit don't matter out here they from anyother st," meaning that it did not matter if the firearms were stolen because they would be from another state. The Defendant then stated that he sold firearms himself, stating "Yea they so easy come across now can't charge high numbers for em no more fr" and followed up with "oh hel nah a pole a pole out here," meaning that stolen firearms were easily obtainable, and that it did not matter if the firearms were stolen. The seller suggested he could scratch the serial numbers off the firearms for the Defendant so the Defendant could make more money selling stolen firearms.

On March 24, 2024, the Defendant and the seller discussed the firearm that was ultimately seized by Postal Inspectors on May 13, 2024, the Glock 23, .40 caliber semi-automatic pistol bearing serial number FHG941. The Defendant said that his friend was looking for a firearm, texting "My man's tryin grab a pole rn too lls." The Defendant requested a 10mm handgun, saying "dirty don't matter," and that his friend would pay "no more than a stack," meaning that his friend did not want to pay more than $1,000. Between March 24, 2024 and May 1, 2024 the Defendant and the seller texted back and forth, discussing different caliber handguns.

On April 14, 2024, the Defendant asked if there were .40 caliber guns available and told the seller that he preferred .40 caliber or .357 caliber Generation 4 or 5 Glocks. The Defendant and the seller continued to message back and forth until May 1, 2024, when the seller told the Defendant that he had a Glock 22 .40 caliber handgun for sale. The two haggled over the price, and agreed on $1,100. They traded messages about shipping. After the sale, the Defendant attempted to contact the seller and received no response. Ultimately, this firearm was seized by Postal Inspectors on or about May 13, 2024.

The Defendant agrees and stipulates that he knowingly conspired with another person to receive any firearm, specifically a Glock 29, Gen 5 10mm semi-automatic handgun bearing serial number CCRS762; and a Glock 23, .40 caliber semi-automatic pistol bearing serial number FHG941. The Defendant also agrees and stipulates that he knew or had reasonable cause to believe that such receipt of the firearms would constitute a felony, specifically a violation of 18 U.S.C. § 922(g)(1). The Defendant also agrees and stipulates that he possessed three machinegun conversion devices, or Glock switches; approximately 147 rounds of 9mm caliber ammunition; approximately 234 rounds of 10mm caliber ammunition; and approximately 20 rounds of .357 caliber ammunition. The Defendant agrees that the firearms described above meet the definition of a "firearm" under 18 U.S.C. § 921(a)(3) because the firearms were weapons capable of expelling a projectile by the action of an explosive. The Defendant agrees that the ammunition described above also meets the definition of ammunition pursuant to 18 U.S.C. § 921(a)(17)(A). The

Defendant agrees that the machinegun conversion devices, or Glock switches, meet the definition of a machinegun as defined in 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(b), as they are parts designed and intended solely and exclusively for use in converting a weapon into a machinegun, meaning any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by single function of the trigger. The Defendant was not authorized to possess these machineguns. The firearms and ammunition were manufactured outside the State of Maryland, and therefore traveled in and affected interstate and/or foreign commerce prior to being found in this State. Prior to May 20, 2024, the Defendant had been convicted of a crime punishable by a term of imprisonment exceeding one year, the Defendant was aware of that fact prior to and at the time of the events described herein, and his civil rights had not been restored.

All the above-described events took place in the District of Maryland.

SO STIPULATED:

_____
Patrick Rigney
Special Assistant United States Attorney

_____
Jonathan Drew Bartgis
Defendant

_____
Charles L. Waechter, Esq.
Counsel for Defendant

Rev. August 2018

14